May it please the Court, my name is Michael Mills. I, along with my colleague Dawn Sestito, represent Mr. Ruiz. There are two issues here. First, whether the Court erred in granting summary judgment on the merits of Mr. Ruiz's claim that he was placed at a cell with a known enemy in violation of the Eighth Amendment. Counsel, what's the material issue of fact in this case? Your Honor, there are two material issues of fact. First, whether the defendants saw an enemy listing in a CDC documentation that would have alerted them to a substantial risk of serious harm. So what if they did see it? That's at most negligence, unless they deliberately disregarded it, right? Your Honor, we contend that it's more than negligence if they saw it and disregarded it. The enemy status has important policy procedures behind it. Specifically, no one who has an enemy status is supposed to be celled with another person, which has that same enemy status. This in itself suggests that there is a substantial risk of serious harm in placing two known enemies together in a cell. Thus, disregarding this sort of information would rise above negligence to the level of negligence. Counsel, the thing that confuses me a little is that Mr. Ruiz signed a consent form and then he stood to be unhandcuffed without verbalizing any objection. How is there a material issue of fact in view of those two occurrences? Your Honor, as to the signature on the form, there is a material issue of fact as to what degree Mr. Ruiz read the form. Both defendants observed as he signed but did not read the form. In fact, one officer handed it to him and said, hurry up and sign this so we can get out of here. This was outside of the context in which the form would have normally been signed, which was after the two men would have been given a chance to confer regarding compatibility. But this wasn't Mr. Ruiz's first transfer. I mean, the only thing on that form is consent to transfer. It's not a form where you have a lot of different occurrences that you're consenting to. The only thing is a transfer. Is that correct? This form only addresses transfer. Yes, Your Honor. And this was not the first transfer that Mr. Ruiz had been subjected to. No, Your Honor. But this transfer is distinct from previous transfers in that it did not have the compatibility discussion with Mr. Guillen beforehand. Well, just a minute. What evidence is there that he didn't have any compatibility conversation with Guillen? I mean, as I read the record, your client first says he never saw anybody next to him. Then he changes his story and says, I don't recall seeing anybody next to me or recall talking to anybody. But there is evidence in the record that suggests not only that they were next to each other in a holding cell, and they did talk. And I don't see anything in his testimony to suggest that he wasn't next to the other guy in a holding cell. Your Honor, I believe the record shows essentially a dispute as to what, you know. Well, don't talk essentially a dispute. What's the dispute? I didn't see anything in your client's testimony, any place, that says I never was put in a holding cell next to Guillen. All I see is I didn't see anybody next to me or I don't recall seeing anybody next to me. Nothing about I didn't ever go in a holding cell next to him. Your Honor, to the extent that that is the statement, I feel that that record before the district court would require the reasonable inference that he did. But what reasonable inference do I give to no testimony? Your Honor, I don't remember exactly where in the record he. All right. And let's talk about something that my good colleague talked about. You say that I should have some inference that people were somehow deliberately indifferent. But I didn't see any testimony in this record that these police or these people who were transferring saw this stuff and transferred anyway. I see. Didn't see it. Didn't see it. If it was there, it should have been there. But I didn't see it. If I'd have seen it, I'd have done something different. And I see no testimony contrary to that. Your Honor, what has to be done is draw the reasonable inference here. We have. So reasonable inference that they lie? Your Honor, whether the. It's simply a matter of there are two inferences. One is which the policy suggests that the form would have been there. It was updated on June 23rd. And we also know that they reviewed the remainder of the file very carefully. What's the inference? Your Honor. I mean, the inference can only be they lie because there's nothing in this record to suggest if they were going to go in front of the jury. There'd be two people who'd come in and say, I reviewed it all. I didn't see it. What's your testimony against that? Your Honor, it comes down to simply the evidence that the form had to have been there. Right. But if the form was there and they didn't see it at the most, that's negligence. What you're suggesting is that I infer from the whole that they lie. What evidence is there they lie?  If you don't mind, I'd like to hand it over to my colleague. Sure. May it please the Court. My name is. I apologize. You need to agree to split the argument. May it please the Court. My name is Dawn Sestito. I'd also like to reserve a few minutes for rebuttal. But let me kind of jump in and try to answer some of the questions that the panel has. You only have three minutes and 55 seconds. Okay. I'll keep a close eye on it. In terms of the evidence that Mr. Ruiz didn't have an opportunity to confer with Mr. Guillen about compatibility, except for the record, page 27, in his affidavit, Mr. Ruiz stated, I was never afforded the chance to speak with Guillen about cell compatibility and I never gave verbal consent to be housed with Guillen. But a conclusory affidavit cannot contradict other testimony to the contrary or other statements to the contrary. If he said in a previous, I don't recall or I didn't see. He didn't recall whether there was somebody in a cell next to him or not. He affirmatively said that he didn't confer with Guillen about the cell compatibility. As to the issue on the double cell chrono. Well, I guess my worry about this is this. I'm really looking at summary judgments where you have a burden of proof and where the standard of review is not simple negligence but deliberate indifference. And what you're saying to me is I got all the best evidence I can put together here, Judge, and now on this evidence you've got to find that there can be a question of fact about deliberate indifference? Well, Your Honor, I don't know that we have all the best evidence. Mr. Ruiz's discovery was saved. All you're saying is I wanted to go get some more discovery. What could you find in the records that you didn't already have? There could have been documentation in Mr. Guillen's file about the same enemy status, and that would make it more unlikely if the officers reviewed both files that they missed it in both of the files, that they were negligent both times when they looked. There could have been other documentation regarding the enemy. You could have got the access to the central file under California law, couldn't you? I don't believe that we could have for Mr. Guillen. Mr. Ruiz had access to his own central file, and those are the documents that were submitted. In terms of the double-cell chrono, Mr. Ruiz testified that it could have been a different form altogether, that other forms that you sign when you are moved as a user could have been a laundry list or it could have been a form agreeing that everything in the cell was in good shape, and that's what he in his deposition stated that he believed the form to be. So that's why when Sergeant Sotelo and Officer Aldana saw that Mr. Ruiz did not read the form before he signed it, it was unreasonable for them to rely on that form as a form of consent. Isn't there evidence in the record that Guillen never physically or verbally warned staff, that Guillen never did anything except sit up in his bunk and calmly take off his handcuffs, sign the slip? Yes, Your Honor. He expected to have D in his cell, only look confused when attacked? Yes. Isn't that here? But there was no discovery. Mr. Ruiz was not able to seek any discovery about Mr. Guillen's situation. You know that Mr. Guillen filed his own lawsuit, so it's reasonable to infer that he was similarly unhappy about this selling decision. He was unhappy because he was punched in the face. But that doesn't change the fact that the two men never should have been put in the cell together at all because of the enemy. Is it a violation of the Eighth Amendment deliberately to subject somebody to a serious risk? It is, yes. Even if there is no injury? Yes. Under Farmer, Farmer states that an inmate doesn't have to wait for an assault to happen before he can bring a lawsuit under the Eighth Amendment. And I'd like to reserve a few seconds. It's cruel or unusual punishment to subject somebody to a serious risk of cruel and unusual punishment. Well, I think that the level of injury is an issue of damages, not an issue of whether there's a substantive Eighth Amendment claim. Well, there was some injury. And there was some injury. Well, does it matter at all that Mr. Ruiz threw the first punch? I think that in this case what's most critical is that they were documented enemies and that there's evidence that creates a tribal issue as to whether Sergeant Sotelo and Officer Aldana were aware of that. But my question to you was, does it matter at all that he threw the first punch? In this case, Mr. Ruiz, I understand why that's an issue that is of interest to the panel. Mr. Ruiz's testimony is that he was afraid and that he was doing what he thought he needed to do to survive. Well, do you have any case authority? What's the strongest case that supports your argument that even the aggressor has a cause of action against the person who's the non-aggressor in a deliberate indifference context? Your Honor, most of the cases that deal with fights between inmates don't focus on who was or wasn't the aggressor. It's whether the officers were aware of the risk or not. Do you have a case specifically that addresses a situation where the aggressor was able to state a claim for deliberate indifference? No, I'm not aware of a case like that, Your Honor. We'll give you a minute for rebuttal. Thank you very much. May it please the Court, Deputy Attorney General Kenneth Roost for Defendant Apelli Aldana. And with the Court's permission, Sergeant Sotelo's counsel and I would like to share our time tonight. All right. The evidence shows that Officer Aldana was not deliberately indifferent in selling Ruiz a new inmate transfer with Inmate Guillen. On the contrary, he was deliberately concerned. Why can't I make an assumption if I'm a trier of fact that since there is a dated entry showing these people to be enemies and since the whole purpose of noting enemies is to see that people aren't sold together, basically, or put together, and that it's dated prior to the date they said they looked at the files, that there's an issue of fact of whether they actually saw it. You can't really expect an affidavit from Ruiz saying, oh, yes, they saw it. He wasn't there. All they can do is say it was in the file.  They said they went through the file. They had to have seen it. And when they say they don't, they're not telling the truth. Your Honor, it would be an unreasonable inference to suppose that Officer Aldana would voluntarily undertake to look through the Form 114s only to see and intentionally ignore enemy documentation because that would obviate the very purpose of his looking in the first place. And it wasn't his obligation, but rather the supervising officer on duty, Sergeant Sotelo, who had the ultimate housing decision. And indeed, on the inmate compatibility form, beneath the inmate signatures that they would sell compatibly together, is Sergeant Sotelo's checkoff that he'd reviewed the forms, saw no suggestion that the inmates would be compatible, and approved the transfer. Would it be compatible or incompatible? He saw no indication in the forms that the inmates would be incompatible. And in addition to that, Officer Aldana identified an inmate who shared the same race and geography as Inmate Ruiz, which is an indication of a lower probability of violence and a higher probability of compatibility. Counsel, as a procedural matter, if the corrections officer saw the enemy notation, would that automatically mean that those two could not be sold together? Perhaps, Your Honor. But the fact that the inmates then subsequently gave the written permission or written assertion that they would sell compatibly together diminishes any risk of harm in selling them together. I guess I was asking a procedural question. Does the process stop at the point where there is a notation that the two potential sellies are enemies? Does the process stop at that point and there is no ability for the two to talk together? It's not in the record whether there's any procedure for recourse to absolve enemy documentation, but enemies are not supposed to be sold together. So may we safely assume that if this form had been seen and there was an enemy notation, that the process would have stopped and the search would have begun for a different potential sellmate? I think so, yes, Your Honor. Does it add to the question of fact that, and frankly we're trying to determine if there is a question of fact here, does it add to the question of fact that this particular plaintiff was a bad boy in the prison, that he was somebody who had been in trouble before, that prison authorities don't like bad boys and they don't like those who are constantly in trouble? No, Your Honor, because by definition the state inmate population is filled with uniformly dangerous and violent offenders who are antisocial. And the fact that one amongst the 170,000 approximately is a bad seed, they're all bad seeds. For all inferences, it's a bad seed. It's no different than the inmate in the state before who had had 11 previous assaults before being sold with a new inmate. But wasn't this case a little different in that this particular inmate had been caught making weapons to use against the corrections officer? So that was a different level of culpability as opposed to just having infractions regarding other assailants or other inmates. It's not in the record the frequency with which inmates do make weapons or the allegations that they used against guards. But in this instance, I don't think it shows any knowledge certainly on the part of the officers that they would have known Ruiz was particularly dangerous and that their behavior would have changed as a consequence of it. If anything, they would have taken undue caution with inmate Ruiz rather than selling him with a documented enemy in such a situation. And with that, it would be all right to turn it over to Lieutenant Sergeant Sotelo's counsel at this point. May it please the Court, Matt Grigg appearing on behalf of Defendant Appley, Sergeant Anthony Sotelo. I'd like to start by pointing out that the Court has made an excellent issue with respect to Mr. Ruiz serving as the aggressor in this context because there was no evidence in this record that Mr. Guillen posed a substantial risk of serious harm at any point during the equation. The only time that he had any inclination or any inclination was evidenced was when he was acting in self-defense. I don't think that it is cruel and unusual punishment to put two inmates together if the only risk of harm that the first one will be self-defense. Recognized in a state of Ford v. Palmer and in Supreme Court cases cited therein, double selling is not inherently unconstitutional. And if you assume that if you were to attack me, I would respond in self-defense, that can't be cruel and unusual punishment. It might be for you. In other words, you've got another lawsuit from Mr. Guillen. I think that's an excellent point, that Mr. Guillen might have a better case than Mr. Ruiz. But here, there's no evidence in the first place of a substantial risk of serious harm whatsoever. Attorney, then. But does the fact situation change if, in fact, there is some regulation? That's why I thought my colleague's question was important, that there's some regulation that suggests, once noted, they should not be housed together. I think that's a good practice, but as my colleague pointed out, I don't think there's a specific regulation. And I think it's good practice to avoid future harm. But in this particular context, the concern about future harm is not as to Mr. Ruiz. It's as to Mr. Guillen. So it's a good practice, but, again, it doesn't advance a substantial risk. I suppose, though. I mean, let's say there's a fight in a prison and one prisoner is the aggressor and beats another one up terribly. It might be a danger to either one of them after that to sell them together. I agree in the abstract. But in this particular instance, there's no indication on the part of Mr. Guillen that he had any lingering animosity. Mr. Ruiz said in the first place, yeah, I attacked the guy, and I didn't have any reason to suspect he had any animosity toward me. I just didn't like what he said or how he said it. And then after that, he said, yes, I'm cool to sell with him. I don't care what happened before. And then, again, he signed the double-sell chrono. And then when he's being sold, still, he doesn't act out. He does nothing until he's attacked. Counsel, what's your response to opposing counsel's observation that Mr. Ruiz thought that was a different form about laundry or some other matter? Well, I think that's a good point, and that is, first of all, it's undisputed, as evidenced by Officer Aldana's declaration, that Sergeant Sotelo explained the form to him before this all occurred. So he got the form, and then when he gets the form presented to him, of course, he's seen it multiple times before. But, again, I don't think that's the most relevant aspect. I don't think there's any evidence. I think it's clear he did know what he was signing. But even if there's a dispute about that, what matters here is what Sergeant Sotelo knew. And he didn't know that Mr. Ruiz read the form without signing it, because Sergeant Sotelo had previously explained to him, hey, you're going to be signing a double-sell chrono. Plus, it's also undisputed, Officer Aldana told him, both of them told me they're cool to live together. Do you know the outcome of the lawsuit involving Mr. Guillen, by chance? I think he hasn't proceeded with it, but that's somewhat speculative. So that turns to the second point, which is there's no evidence that was presented in the district court of knowledge on the part of Sergeant Sotelo that there was a substantial risk of serious harm at issue in this case. Was there any evidence that Sergeant Sotelo had looked through the files or anything? Yes. Sergeant Sotelo declared that I reviewed some of the files. I reviewed some 114 documentation. He didn't recall exactly what he reviewed. He did not review the 114A1 forms, or at least he doesn't have a recollection. So there's no evidence of that. So there's no evidence that he was put on notice by a 114A1 form at all. And so in the absence of evidence of notice, there's no – the summary judgment should be held. Was there any evidence that it was his duty to review those forms? The form itself says after a review of the 114A1 forms. But in this case, Officer Aldana reviewed it, as he specifically stated in his declaration. So Officer Aldana, that's something that Sergeant Sotelo should be able to rely on. There's no evidence that he himself is supposed to do it. So I don't see a problem there. So that leads us to qualified immunity. And in light of the absence of any evidence of a substantial risk of serious harm, in the absence of evidence of notice or actual knowledge to Sergeant Sotelo of a substantial risk of serious harm, qualified immunity was clearly appropriate because rather reasonable officers in his position could have concluded, and I would submit certainly would have concluded, that it was okay to sell two consenting inmates with one another. All right. Thank you, Counsel. One minute for rebuttal. Thank you, Your Honor. Just to respond to a few of those points. In terms of looking at the affidavits that were submitted by Sotelo and Aldana, it's a credibility determination whether or not they saw the enemy documentation in the form and then disregarded it. And I think that the panel's question about Mr. Ruiz's involvement in the conspiracy to make weapons to attack peace officers, that's the exact reason why he was transferred to the new section. And so it's reasonable to infer that Sotelo and Aldana were aware of that. And a trier of fact could, taking all of the evidence that was presented on summary judgment, believe, disbelieve the statements by Sotelo and Aldana that they reviewed it. I guess that goes to my question. It doesn't seem to me that one should allow summary judgment to go forward if the only thing you have is a credibility determination on those who would give evidence. If you have conflicting evidence, maybe one should rule on summary judgment that there's a genuine issue of fact. But if the best you have is a credibility determination, what case says I shouldn't grant summary judgment? But it's not just a credibility determination. It's looking at the totality of the evidence, their awareness of Mr. Ruiz's alleged involvement in the conspiracy, the fact that the form had to... Was there not a case? I ask you, what case do you have that suggests that the best you have is a credibility determination and therefore summary judgment should not be granted? Your Honor, there are a couple of cases that we cited in our brief that stated that credibility determinations should not typically be made on summary judgment. And so particularly... Oh, I didn't see them, so I guess you'll tell me about that later. I'm sorry. I have the brief over at the table. I can grab it. Oh, you don't have to. Could you wrap up, counsel, please? Yes. Well, my time is up now, so I... We believe strongly that there is a disputed issue of fact here. When you take the totality of all of the facts, that a trier of fact could conclude that the defendants were aware of the enemy listing and that they disregarded it. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Finale v. Astruz.
judges: Canby, Rawlinson, Smith N. R.